UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SUNRISE TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 15-11546-NMG |
| SELC IRELAND, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS

June 14, 2016

DEIN, U.S.M.J.

## I.  INTRODUCTION

This is a patent infringement action in which the plaintiff, Sunrise Technologies, Inc. ("Sunrise"), claims that the defendant, SELC Ireland Ltd. ("SELC"), is willfully and deliberately infringing, contributing to the infringement, and/or inducing the infringement of U.S. Patent No. 7,825,793 entitled "Remote Monitoring and Control System" (the "'793 Patent").  SELC is an Irish corporation with a principal place of business in Mayo, Ireland, and a competitor of Sunrise in the market for outdoor lighting control products.  Since 2012, SELC has relied on the services of Amanda Dixon, who is listed on SELC's promotional materials as the company's Business and Development Manager, to carry out its sales and marketing efforts throughout North America, including the United States.  Ms. Dixon, who is apparently an independent contractor, performs these activities from her home in North Carolina.  However, she has never sold or promoted any of SELC's products to customers or potential customers who are located in Massachusetts.

The matter is presently before the court on the "Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and (5)" (Docket No. 15), by which SELC is seeking the dismissal of this action for lack of personal jurisdiction and insufficient service of process.  In support of its motion, SELC argues that it lacks sufficient contacts with Massachusetts to subject it to personal jurisdiction in this court under Fed. R. Civ. P. 4(k)(1)(A).  It also contends that this court may not exercise personal jurisdiction over it under the federal long-arm statute found in Fed. R. Civ. P. 4(k)(2) because that Rule applies only where a foreign defendant is not subject to personal jurisdiction in the courts of any state, and SELC maintains that it is subject to personal jurisdiction in the courts of North Carolina as a result of Ms. Dixon's activities there.  Finally, SELC argues that Sunrise's effort to effectuate service of process upon it by delivering a copy of the Summons and Complaint to Ms. Dixon's home in North Carolina was inadequate because Ms. Dixon is not an officer, managing agent or general agent of the company, and is not authorized to accept service of process on its behalf.  Therefore, it contends that this matter must be dismissed on the grounds of insufficient service of process as well.

As described below, this court finds that SELC is subject to personal jurisdiction in this court under the federal long-arm statute established by Rule 4(k)(2).  This court also finds that Sunrise's efforts at service upon SELC should be deemed effective because Ms. Dixon has acted as a managing or general agent of SELC for purposes of accepting service of process, and because Sunrise has completed a second service upon SELC in Ireland pursuant to the Hague Convention.  Accordingly, and for all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that SELC's motion to dismiss be DENIED.

## II.  STATEMENT OF FACTS

### Standard of Review of Record

"On a motion to dismiss for want of personal jurisdiction, the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists."  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009), and cases cited.  Where, as here, "the district court's disposition as to the personal jurisdiction question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that [the defendant is] subject to personal jurisdiction."  Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003).[1]  In evaluating whether the plaintiff has met this burden, the court "must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor."  Id.  However, the plaintiff is only entitled to "those inferences that are reasonable" from the allegations.  Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1018 (Fed. Cir. 2009).  Applying this standard to the instant case, the relevant facts are as follows.[2]

---

[1]  There is no dispute that the law of the Federal Circuit governs the determination of personal jurisdiction in a patent infringement case.  See Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1230 (Fed. Cir. 2010) ("The law of the Federal Circuit, rather than that of the regional circuit in which the case arose, applies to determine whether the district court properly declined to exercise personal jurisdiction over an out-of-state accused infringer").

[2]  The facts are derived from: (1) Sunrise's Complaint for Patent Infringement (Docket No. 1) ("Compl."); (2) the Affidavit of Paul Carey ("Carey Aff."), which is attached to SELC's Motion to Dismiss (Docket No. 15); (3) the exhibits attached to the Declaration of W. Brett Morrison (Docket No. 18) ("Pl. Ex. __"); and (4) the Affidavit of Amanda Dixon ("Dixon Aff."), which is attached to the Defendant's Supplemental Brief in Further Support of its Motion to Dismiss (Docket No. 32).

3

**The Parties**

The plaintiff, Sunrise, is a Massachusetts corporation having a principal place of business in Raynham, Massachusetts. (Compl. ¶ 2). Sunrise markets outdoor lighting control products under a variety of brand names, as well as a range of wireless products. (Id. ¶ 3). In addition, Sunrise owns all of the rights, title and interest in the '793 Patent. (Id. ¶ 8). The '793 Patent was issued on November 2, 2010 and is entitled "Remote Monitoring and Control System." (Id.). It is generally directed to "[a] communication system that provides communication of information between an end user device and a remote end user[,]" and involves the formation of a mesh network of wirelessly linked communication nodes mounted on top of utility poles such as street lights. (See Pl. Ex. A at Abstract). In this action, Sunrise claims that "SELC has infringed and continues to infringe, literally or under the doctrine of equivalents, the '793 patent by making, using, importing, offering to sell, and/or selling products or processes that practice one or more inventions claimed in the '793 patent[.]" (Compl. ¶ 11). It further claims that SELC has induced others, including but not limited to its customers, to infringe upon Sunrise's rights in the '793 Patent. (Id.).

Defendant SELC is an Irish corporation that has its principal place of business in Mayo, Ireland. (Carey Aff. ¶ 3). According to its marketing materials, SELC designs, manufactures and markets street lighting control devices for use in the global market, and its stated mission is "[t]o make the street light the most important piece of urban infrastructure everywhere, bar none, by providing world-class intelligent street lighting control and urban monitoring solutions that our customers will say 'are the best available, globally.'" (Pl. Ex. B at 2). There is no dispute that SELC markets and sells its street lighting control products, including products which

are the subject of Sunrise's infringement claim against SELC, to customers and potential

customers located in the United States.  (Id. at 8; Dixon Aff. ¶¶ 5-6).  At issue is whether SELC's

activities in this country subject it to personal jurisdiction in Massachusetts or in North Carolina.

### SELC's Lack of Contacts with Massachusetts

Sunrise alleges in its Complaint, "[o]n information and belief," that SELC has sufficient

contacts with Massachusetts to subject it to personal jurisdiction in this forum.  (Compl. ¶ 7).

However, the evidentiary record fails to support this allegation.  The record provides uncontro-

verted evidence that SELC is not registered to do business in Massachusetts and conducts no

business activities here.  (Carey Aff. ¶¶ 10-11).  Nor has anyone from SELC has ever entered

Massachusetts in order to perform business-related activities on behalf of the company.  (Id.

¶ 12).  The record further shows that SELC has no employees, maintains no bank accounts and

owns no property in the Commonwealth, has never directed any of its advertising toward

Massachusetts, and is not involved in any marketing or sales efforts here.  (Id. ¶¶ 12-14, 18;

Dixon Aff. ¶¶ 5-8).  Moreover, according to SELC's Executive Director, SELC has never entered

into any contractual agreements with Sunrise, much less contracted with Sunrise in order to

provide goods or services to any customers or other individuals located in Massachusetts.

(Carey Aff. ¶ 15).

Sunrise alleges that SELC's infringing conduct includes the marketing and sale of its

"Wireless Central Monitoring Systems."  (Compl. ¶ 11).  SELC understands that those products

include its Central Monitoring System product and its Plug & Play Wireless Lighting Controller

product.  (Carey Aff. ¶ 16).  The record establishes that SELC has never sold either of those

products to a customer in Massachusetts.  (Id. ¶ 17).  Furthermore, while SELC maintains a

website that provides information about the company and is accessible to viewers in

Massachusetts, the website contains no references to Massachusetts, does not enable users to

order products over the internet, and contains no interactive features beyond a search field

and a "Contact Us" option that allows users to request information or share their views with

the company.  (Id. ¶¶ 18-21).  Any requests or comments that are received through the

"Contact Us" feature are handled by SELC employees who are located in Ireland.  (Id. ¶ 20).

### SELC's Activities in North Carolina

While SELC denies that it is subject to personal jurisdiction in Massachusetts, and denies

that it has a registered agent in North Carolina authorized to accept service there, it neverthe-

less contends that North Carolina would be an appropriate forum in which to litigate Sunrise's

claim for patent infringement.  (Def. Supp. (Docket No. 32) at 1).  In connection with this

argument SELC has represented that it would not challenge the jurisdiction of the North

Carolina court if suit proceeded there.  As detailed below, however, this court concludes that

there is no personal jurisdiction over SELC in North Carolina.

The record establishes that SELC relies primarily upon Amanda Dixon, a resident of

North Carolina, to carry out its sales and marketing operations throughout North America,

including the United States, and that Ms. Dixon performs most of those activities from her

home in Apex, North Carolina.  (Dixon Aff. ¶¶ 3-5).  For example but without limitation, Ms.

Dixon coordinates and implements all of SELC's U.S. sales activities, prepares sales and

marketing materials, provides and coordinates customer service assistance, and makes

arrangements for SELC to participate in trade shows and other marketing events, from her

home in North Carolina.  (Id. ¶ 5).  In addition, Ms. Dixon communicates with other SELC

personnel, as well as with the company's customers, potential customers and marketing contacts, from her North Carolina residence.  (Id.).  According to Ms. Dixon, SELC has been able to achieve significant sales of its products in Florida, worth millions of dollars, due to the efforts she has made and the work she has performed in North Carolina.  (Id. ¶ 6).  However, she has not been involved in any marketing or sales efforts in Massachusetts, and is unaware of any such activity by SELC that has occurred in Massachusetts.  (See id. ¶¶ 5-7).  Similarly, there is no evidence that she has directed any sales or marketing efforts at residents of North Carolina or made any sales for SELC to any North Carolina-based customers.  (See id. ¶¶ 5-6; Pl. Exs. C-D, K-M).

Although Ms. Dixon is allegedly an independent contractor rather than an employee of the defendant, both SELC and Ms. Dixon hold her out to the public as SELC's Business Development Manager.  (See id. ¶¶ 2, 5; Carey Aff. ¶ 6).  SELC also lists Ms. Dixon on its website as a member of its four-person management team.  (Pl. Exs. E & F).  It is undisputed that Ms. Dixon has represented SELC, in her role as the company's Business Development Manager, since August 2012, and that she typically spends at least 40 hours per week carrying out sales, marketing and other business activities on behalf of the defendant.  (Dixon Aff. ¶¶ 3, 5).  Although SELC asserts that Ms. Dixon performs work for unrelated companies as well, it has not identified any other companies or described how many hours Ms. Dixon spends working for such entities.  (See Carey Aff. ¶ 5).

### Procedural History

On April 8, 2015, Sunrise initiated this action by filing a Complaint for Patent Infringement against SELC.  (Docket No. 1).  On August 6, 2015, Sunrise filed a Proof of Service

indicating that service of process had been made upon the defendant by delivering a copy of the Summons and Complaint, addressed to "SELC Ireland Ltd. c/o Amanda Dixon," at Ms. Dixon's "residence or usual place of abode" in Apex, North Carolina.  (Docket No. 7).  SELC challenges the adequacy of Sunrise's service in this manner.

Although Sunrise maintains that its service upon Ms. Dixon was effective, it attempted to serve SELC a second time pursuant to Article 10(a) of the Hague Convention.  (See Pl. Ex. G; Pl. Opp. Mem. (Docket No. 17) at 3).  Thus, on or about September 11, 2015, Sunrise sent copies of the Summons and Complaint, via Federal Express, directly to the defendant at its principal place of business address in Mayo, Ireland.  (See Pl. Ex. G).  The parties dispute whether the plaintiff's failure to file a second Proof of Service following its service under the Hague Convention renders its second attempt at service insufficient under the Federal Rules of Civil Procedure.

Additional factual details relevant to this court's analysis are provided below where appropriate.

### III. ANALYSIS

#### A. Personal Jurisdiction -- Generally

The defendant has moved to dismiss this action, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5), for lack of personal jurisdiction and insufficient service of process.  This court turns first to the issue of personal jurisdiction.

"Analysis of personal jurisdiction in federal court begins with Rule 4 of the Federal Rules of Civil Procedure."  Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1410 (Fed. Cir. 2009). Two provisions of that Rule are relevant to the parties' arguments in this case.  The first, Rule

4(k)(1)(A), provides that "service of process establishes jurisdiction over a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" Id. (quoting Fed. R. Civ. P. 4(k)(1)(A)). Determining whether personal jurisdiction exists over a foreign defendant under this Rule "involves two steps." Id. at 1411. The court "must first decide whether the forum state's long-arm statute permits service of process" on the defendant. Id. It "must then determine whether the assertion of personal jurisdiction in accordance with that long-arm statute would violate the U.S. Constitution's guarantee of due process." Id. "The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established minimum contacts in the forum State.'" Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1230-31 (Fed. Cir. 2010) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)) (additional quotations and citation omitted). By its Complaint, Sunrise claims, "[o]n information and belief," that SELC is subject to personal jurisdiction in this court, pursuant to Rule 4(k)(1)(A), because

> SELC has offered its products for sale in this District, has transacted business in this District, has committed and/or induced acts of patent infringement in this District, and/or has placed its products into the stream of commerce through established distribution channels with the expectation that such products will be purchased by residents of this District.

(Compl. ¶ 7). However, the evidence presented to this court undermines these allegations, and defeats Sunrise's claim that this court has personal jurisdiction over the defendant under Rule 4(k)(1)(A).

The second provision that is relevant to this case is Rule 4(k)(2). That Rule provides in pertinent part: "For a claim that arises under federal law, serving a summons . . . establishes

personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  "Rule 4(k)(2) was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law."  Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1293-94 (Fed. Cir. 2012).  As the Federal Circuit has explained:

> Rule 4(k)(2) thus approximates a federal long-arm statute, allowing district courts to exercise personal jurisdiction even if the defendant's contacts with the forum state would not support jurisdiction under that state's long-arm statute, as long as (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements.

Id. at 1294.  Sunrise argues that Rule 4(k)(2) supports a finding of personal jurisdiction over the defendant in this forum while SELC contends that the Rule is inapplicable because it is subject to personal jurisdiction in the courts of North Carolina.  (See Pl. Opp. Mem. at 1; Def. Reply Mem. (Docket No. 21) at 3).  This court finds that SELC's voluntary consent to jurisdiction in North Carolina is insufficient to defeat Rule 4(k)(2) because the defendant has failed to establish an independent basis for jurisdiction in that forum.  Since the defendant is not subject to personal jurisdiction in any other state, this case may proceed in Massachusetts.

### B.  Personal Jurisdiction Under Fed. R. Civ. P. 4(k)(1)(A)

Although Sunrise alleges in its Complaint that SELC has sufficient contacts with Massachusetts to subject it to personal jurisdiction in this court consistent with the state's long-arm statute and principles of due process, it has not pursued this argument in opposition to SELC's

motion to dismiss.  (<u>See</u> Pl. Opp. Mem. at 7-13).  Rather Sunrise argues only that SELC is subject to personal jurisdiction under Rule 4(k)(2).  (<u>See</u> <u>id.</u>).  The undisputed facts support SELC's argument that Sunrise has failed to make the *prima facie* showing necessary to establish personal jurisdiction in this court under Rule 4(k)(1)(A).  (<u>See</u> Def. Mem. (Docket No. 16) at 4-9).[3]  Since the parties basically agree that Rule 4(k)(1)(A) is not applicable here, this argument will be addressed only briefly.

Personal jurisdiction over a foreign defendant is appropriate under Rule 4(k)(1)(A) "if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." <u>Nuance Commc'ns, Inc.</u>, 626 F.3d at 1230 (quoting <u>3D Sys., Inc. v. Aarotech Labs, Inc.</u>, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998)).  "[T]he Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'"[4] <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 52 (1st Cir. 2002) (quoting <u>"Automatic" Sprinkler Corp. of Am. V. Seneca Foods Corp.</u>, 361 Mass. 441, 443, 280 N.E.2d 423, 424 (1972)).  Accordingly, for purposes of this case, "the statutory and constitutional inquiries coalesce into

---

[3]  As Sunrise implicitly recognizes, the general allegations of contacts with Massachusetts made upon information and belief in its Complaint are not persuasive here, since they are not supported by specific facts and are directly contradicted by the defendant's affidavits.  <u>See</u> <u>Elecs. for Imaging, Inc.</u>, 340 F.3d at 1349 (on motion to dismiss for lack of personal jurisdiction, district court must accept only "the *uncontroverted* allegations in the plaintiff's complaint as true" (emphasis added)); <u>Venmill Indus., Inc. v. ELM, Inc.</u>, 100 F. Supp. 3d 59, 65 (D. Mass. 2015) (applying Federal Circuit law and refusing to credit plaintiff's allegations "in the face of the specific denials in [defendant's] sworn declaration").

[4]  The Massachusetts long-arm statute defines "person" to include corporations.  Mass. Gen. Laws ch. 223A, § 1.

the question whether due process is satisfied by the court's exercise of personal jurisdiction over [the defendant]." Touchcom, Inc., 574 F.3d at 1411.

Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)).  "Under the 'minimum contacts' test, a defendant may be subject to either specific jurisdiction or general jurisdiction. Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.'" LSI Indus., Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting Burger King Corp., 471 U.S. at 472-73, 105 S. Ct. at 2182).  General jurisdiction arises when a defendant "corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" Daimler AG v. Bauman, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (quoting Int'l Shoe Co., 326 U.S. at 318, 66 S. Ct. 154).  This court finds that SELC lacks sufficient contacts with Massachusetts to satisfy either standard.

### General Jurisdiction in Massachusetts

The Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." Daimler AG, 134 S. Ct. at 760.  "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." Id. (quotations, punctuation and citations omitted).  In addition, the Supreme Court has left open "the possibility that in an exceptional

case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 761 n.19 (internal citation omitted). This is not such a case.

There is no dispute that SELC is not incorporated under the laws of Massachusetts and does not have a principal place of business here. (See Carey Aff. ¶ 3). Nor is there any evidence connecting SELC to Massachusetts beyond the existence of a website that is accessible to anyone with an internet connection, including residents of the Commonwealth. (See id. ¶¶ 10-15, 17-18; Dixon Aff. ¶¶ 5-8). However, "the ability of [forum] residents to access the defendant['s] website[ ] . . . does not by itself show any persistent course of conduct by the defendant[ ] in the [forum]." Campbell Pet Co. v. Miale, 542 F.3d 879, 884 (Fed. Cir. 2008) (quoting Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1281 (Fed. Cir. 2005)) (alteration omitted). Therefore, the "record plainly does not support the conclusion that [SELC] has 'affiliations so continuous and systematic as to render [it] essentially at home' in Massachusetts." Venmill Indus., Inc. v. ELM, Inc., 100 F. Supp. 3d 59, 67 (D. Mass. 2015) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)).

## Specific Jurisdiction in Massachusetts

"Where the defendant is not subject to general jurisdiction, due process may still permit a district court to exercise specific jurisdiction." Id. Under the law of the Federal Circuit, the determination as to whether specific jurisdiction exists

> requires the court to address two issues that bear on whether the defendant has purposefully established minimum contacts with the forum state: (1) whether the defendant "has purposefully directed his

> activities at residents of the forum"; and (2) whether "the litigation
> results from alleged injuries that arise out of or relate to those activities."

Campbell Pet Co., 542 F.3d at 884 (quoting Burger King Corp., 471 U.S. at 472-73, 105 S. Ct.

2174).  "If the court concludes that those two conditions are satisfied, a third factor comes into

play, i.e., 'whether the assertion of personal jurisdiction would comport with fair play and

substantial justice.'"  Id. (quoting Burger King Corp., 471 U.S. at 476, 105 S. Ct. 2174).  Because

this court finds that neither of the first two factors has been satisfied in this case, there is no

specific personal jurisdiction over SELC in Massachusetts and no need to consider the third

factor in the jurisdictional analysis.

As detailed above, there is no evidence in the record that SELC engaged in any activities

that were directed at residents of Massachusetts.  The evidence presented by SELC shows that

the defendant maintains no property in Massachusetts, conducts no business activities here, is

not involved in any marketing or sales activity in Massachusetts, and has not targeted individu-

als who are located in this forum.  (See Carey Aff. ¶¶ 10-14, 17-18; Dixon Aff. ¶¶ 5-8).  While

Massachusetts residents are able to access SELC's website and communicate with the defen-

dant via the site's "Contact Us" feature, the record establishes that the website contains no

references to Massachusetts and is not designed to appeal to Massachusetts residents over

anyone else with internet access.  (See Carey Aff. ¶¶ 18-21).  Where, as here, a website "is

accessible from, but does not target, the forum state, then the defendant may not be haled into

court in that state without offending the Constitution."  be2 LLC v. Ivanov, 642 F.3d 555, 559

(7th Cir. 2011)), and cases cited.  Accordingly, SELC's website is insufficient to satisfy the first

factor of the test for specific personal jurisdiction.  See Cossaboon v. Maine Med. Ctr., 600 F.3d

25, 35-36 (1st Cir. 2010) (finding that interactive website was not purposefully directed at

residents of forum state where it was not used to sell or render services online, was available to anyone with internet access and did not target forum residents in particular, and contained four stray references to forum state but focused on services rendered in defendant's home state).

Even if Sunrise had been able to satisfy the first factor of the test for specific jurisdiction, it has not shown that its "cause of action arise[s] out of or directly relate[s] to the defendant's activities in [Massachusetts]." HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1308 (Fed. Cir. 1999). Sunrise's sole cause of action consists of a claim for infringement of the '793 Patent. "Patent infringement occurs when a party 'without authority makes, uses, offers to sell or sells any patented invention.'" Id. (quoting 35 U.S.C. § 271(a) (1994)). Therefore, in order for this court to have specific personal jurisdiction over SELC, Sunrise "would have to allege that [SELC] did one of those listed activities in [Massachusetts]." Id. (footnote omitted). Because the uncontroverted evidence fails to demonstrate any such conduct by SELC in Massachusetts, Sunrise cannot satisfy the second factor of the test for specific personal jurisdiction. Conse-quently, this court finds that SELC is not subject to personal jurisdiction in this forum under Rule 4(k)(1)(A).

### C.   Personal Jurisdiction Under Fed. R. Civ. P. 4(k)(2)

Although the Complaint relies solely on SELC's alleged contacts with Massachusetts to support this court's exercise of personal jurisdiction over the defendant, Sunrise argues that SELC is subject to personal jurisdiction in this court pursuant to Fed. R. Civ. P. 4(k)(2). (Pl. Opp. Mem. at 1, 7-13). "Rule 4(k)(2) can be considered even when the plaintiff has affirmatively pled a different basis for personal jurisdiction." Merial Ltd., 681 F.3d at 1296. Accordingly, it is

appropriate for this court to address Sunrise's assertion that "SELC's contacts with the United States are more than sufficient to support personal jurisdiction under the federal long-arm statute."  (Pl. Opp. Mem. at 1).

As described above, three conditions must be satisfied before a court can exercise personal jurisdiction over a defendant under Rule 4(k)(2): "the plaintiff's claim must arise under federal law, the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due process."  Touchcom, Inc., 574 F.3d at 1412.  As in the case of Rule 4(k)(1)(A), the due process analysis under Rule 4(k)(2) requires the court to "consider whether '(1) defendant has purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair.'"  Id. at 1416 (quoting Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1297 (Fed. Cir. 2009)).  However, the analysis differs from Rule 4(k)(1) in that it "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits."  Id. (quoting Synthes, 563 F.3d at 1295).  Thus, for purposes of the federal long-arm statute, the court "must consider [the defendant's] 'contacts with the nation as a whole.'"  Id. (quoting Synthes, 563 F.3d at 1296).

SELC does not dispute (nor could it) that Sunrise's claim for patent infringement arises under federal law.  See Venmill Indus., Inc., 100 F. Supp. 3d at 68 ("There is no doubt that where, as here, 'federal patent law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law,' the claim 'arise[s] under federal law for purposes of Rule 4(k)(2)'" (quoting Touchcom, Inc., 574

F.3d at 1413)).  Nor does it dispute that its contacts with the United States are sufficient to satisfy due process.  Nevertheless, SELC contends that the second condition, sometimes referred to as the "negation requirement," cannot be met because SELC is subject to personal jurisdiction in North Carolina.  (Def. Reply Mem. at 3; Def. Supp. Mem. at 4-13).  This court finds that SELC has made no such showing, and that this action may appropriately be tried in this court.

### Waiver

Sunrise argues, as a threshold matter, that SELC waived its right to designate an alternative forum in which to litigate this matter because it failed to address Rule 4(k)(2) in its moving papers, and raised the matter for the first time in its Reply Memorandum.  (Pl. Sur-Reply Mem. (Docket No. 24) at 3).  Admittedly, "[t]he purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum[,]" but rather to rebut "factual and legal arguments raised in the opposition" to the original motion.  Napert v. Gov't Emps. Ins. Co., Civil Action No. 13-10530-FDS, 2013 WL 3989645, at *2 n.4 (D. Mass. Aug. 1, 2013) (quoting Noonan v. Wonderland Greyhound Park Realty LLC, 723 F. Supp. 2d 298, 349 (D. Mass. 2010)).  Here, however, Sunrise did not raise the issue of Rule 4(k)(2) jurisdiction in its Complaint, so SELC could not have been expected to address it in its original motion to dismiss for lack of jurisdiction.  Since Sunrise first raised Rule 4(k)(2) jurisdiction in its opposition to the original motion, SELC appropriately addressed it in its Reply Memorandum.  The argument was not waived.

**Burden of Proof**

"Although the burden of establishing personal jurisdiction ordinarily falls on the plaintiff," the Federal Circuit has determined that "in the context of Rule 4(k)(2) that general proposition would saddle the plaintiff with an extraordinary challenge in 'proving a negative many times over,' that is, demonstrating that the defendant is *not* subject to jurisdiction in each of the fifty states."  Merial Ltd., 681 F.3d at 1294 (quoting Touchcom, Inc., 574 F.3d at 1413). Accordingly, the Federal Circuit has ruled "that a defendant can 'avoid the application of [Rule 4(k)(2)] only when it designates a suitable forum in which the plaintiff *could have brought suit*.'" Id. (quoting Touchcom, Inc., 574 F.3d at 1415) (emphasis and alteration in original).  Thus, as that court has explained:

> a defendant cannot defeat Rule 4(k)(2) by simply naming another state;
> the defendant's burden under the negation requirement entails identi-
> fying a forum where the plaintiff *could have* brought suit – a forum where
> jurisdiction would have been proper at the time of filing, regardless of
> consent.  Consistent with that obligation, a defendant does not identify a
> more *appropriate* state by suggesting an alternative forum with no basis
> for personal jurisdiction but for its consent.  Absent some independent
> basis for jurisdiction, neither forum is manifestly more appropriate than
> the other in such situations, and we see little reason to conclude that the
> defendant's preference should prevail when choosing among districts of
> equivalent jurisdictional competence based on equal contacts – or lack
> thereof – with the defendant.

Id. at 1294-95 (internal quotations and citations omitted).  In the instant case, SELC has failed to show that it would have been subject to personal jurisdiction in North Carolina such that Sunrise could have filed its Complaint for Patent Infringement against SELC in that state.

**General Jurisdiction in North Carolina**

North Carolina's long-arm statute, like the Massachusetts long-arm statute, "runs coextensive with the federal Due Process Clause[.]"  Wright v. Zacky & Sons Poultry, LLC, 105 F.

Supp. 3d 531, 536-37 (M.D.N.C. 2015).  Therefore, "the single inquiry" before the court "is

whether the exercise of personal jurisdiction over [SELC]" by the courts of North Carolina would

be "'consonant with the strictures of due process.'"  Id. at 537 (quoting Tire Eng'g & Distribu-

tion, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012)).  The defendant

argues that it is subject to general personal jurisdiction in North Carolina because it has

continuous and systematic contacts with that state.  (Def. Supp. Mem. at 10-11).  This court

finds that the record does not support such a conclusion.

There is no dispute that SELC is not incorporated in North Carolina and does not have its

principal place of business there.  (See Carey Aff. ¶¶ 3, 9).  Therefore, the "paradigm bases for

general jurisdiction" in North Carolina are absent from this case.  See Daimler AG, 134 S. Ct. at

760 (quotations, punctuation and citations omitted).  Similarly, this is not "an exceptional case"

where a corporation may be considered "at home," and therefore subject to personal jurisdic-

tion, in another forum.  See id. at 761 n.19.

The issue raised by a claim of general jurisdiction is whether "the continuous corporate

operations within a state are so substantial and of such a nature as to justify suit . . . on causes

of action arising from dealings entirely distinct from those activities."  Id. at 761 (quotations,

punctuation and citation omitted).  Thus, the inquiry "is not whether a foreign corporation's in-

forum contacts can be said to be in some sense continuous and systematic, it is whether that

corporation's affiliations with the State are so continuous and systematic as to render it

essentially at home in the forum State."  Id. (quotations, punctuation and citation omitted).

SELC has not established that North Carolina is such a state.

SELC argues that Ms. Dixon's activities as the company's Business Development

Manager are sufficiently substantial to subject the defendant to general personal jurisdiction in

North Carolina.  (See Def. Supp. Mem. at 10-11).  This court disagrees.  As an initial matter, SELC

has established that Ms. Dixon is not an employee of the company and that, in its view, she is

not even sufficiently integrated into the company to accept service on its behalf.[5]  (See Carey

Aff. ¶¶ 6-8).  More importantly, the record evidence is that SELC's contacts with North Carolina

are merely fortuitous — it is simply the state where Ms. Dixon's home office is located.  See In

re Asbestos Prods. Liability Litig. (No. VI), MDL Docket No. 875, 2014 WL 5394310, at *3 (E.D.

Pa. Oct. 23, 2014) (slip op.) (finding that "an 'exceptional case' authorizing general jurisdiction is

one in which the defendant's forum contacts are so pervasive that they may substitute for its

place of incorporation of principal place of business"); Associated Energy Group, LLC v. Air

Cargo Germany, GMBH, 24 F. Supp. 3d 602, 607 (S.D. Tex. 2014) (explaining that "fortuitous . . .

contacts are not sufficient to establish [general personal] jurisdiction" (quoting Johnston v.

Multidata Sys. Int'l Corp., 523 F.3d 602, 610 (5th Cir. 2008)).  SELC's customers and potential

customers are located in Florida, New York, California, Tennessee, Georgia, Pennsylvania and

Arizona — there is no evidence that it has any customers or potential customers in North

Carolina.  (See Dixon Aff. ¶¶ 5-6; Pl. Exs. C-D, K-M).  There is no evidence that would support a

finding that SELC was "at home" in North Carolina so as to warrant a finding of general juris-

diction.

---

[5]  As detailed below, this court does find that service on Ms. Dixon was proper.  However, the fact that
SELC has publicly asserted that Ms. Dixon does not represent the company as its agent in North Carolina
is relevant to the inquiry whether SELC is "at home" in North Carolina.

**Specific Jurisdiction in North Carolina**

This court also finds that the record is inadequate to establish specific personal

jurisdiction over SELC by the courts of North Carolina.  As described above, the first prong of

the test for specific jurisdiction asks "whether the defendant purposefully directed its activities

at residents of the forum[.]"  3D Sys., Inc., 160 F.3d at 1378.  Here, however, the record does

not satisfy this requirement.  While the evidence establishes that Ms. Dixon has performed

numerous sales and marketing operations from her home in North Carolina, and that SELC has

participated in various marketing events in states such as Florida, Pennsylvania and Arizona,

there are no facts showing that SELC has had any customers or potential customers in North

Carolina, that Ms. Dixon has held meetings or engaged in sales-related conversations with

North Carolina residents, that SELC distributed its promotional materials to individuals or

entities located within that State, or that SELC otherwise directed its sales and marketing

efforts toward North Carolina residents.  (See Dixon Aff. ¶¶ 5-6; Pl. Exs. C-D, K-M).

Even if the evidence were sufficient to show that SELC purposefully directed its activities

at residents of North Carolina, this court cannot conclude that Sunrise's action for patent

infringement "arises out of or relates to those activities" as required to satisfy the second prong

of the test for specific jurisdiction.  3D Sys., Inc., 160 F.3d at 1378.  There is no evidence that

SELC ever manufactured or used any of the allegedly infringing products in North Carolina.  See

id. ("Patent infringement occurs when someone 'without authority makes, uses, offers to sell or

sells any patented invention" (quoting 35 U.S.C. § 271(a) (1994)).  Nor is there any evidence

that SELC sold or offered to sell any of the accused products to North Carolina customers.  For

this reason as well, SELC has not shown that Sunrise could have filed the instant suit against it in

North Carolina.  Therefore, SELC is subject to personal jurisdiction in this court pursuant to Rule 4(k)(2).

### D.      Service of Process

The defendant has also moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(5), on the grounds of insufficient service of process.   "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied."  Nuance Commc'ns, Inc., 626 F.3d at 1236 (quoting Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987)).  Where, as here, "the sufficiency of process is challenged under Rule 12(b)(5), . . . [the] plaintiff bears 'the burden of proving proper service.'"  Aly v. Mohegan Council-Boy Scouts of Am., Civil Action No. 08-40099-FDS, 2009 WL 3299951, at *2 (D. Mass. Apr. 20, 2009) (quoting Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992)).  This court finds that Sunrise has met its burden in this case.

### Service of Process Under Fed. R. Civ. P. 4

Rule 4 of the Federal Rules of Civil Procedure provides a number of methods by which a plaintiff may serve process on a foreign corporation such as SELC.  Two of those methods are relevant to the present matter.  First, under Rule 4(h)(1), service upon a foreign corporation may be accomplished within a judicial district of the United States "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]"  Fed. R. Civ. P. 4(h)(1)(B). Second, under Rule 4(f), service upon a foreign corporation may be accomplished outside the United States "by any internationally agreed means of service that is reasonably calculated to

give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]" Fed. R. Civ. P. 4(f)(1).[6]  There is no dispute that Ireland is a party to the Hague Convention and that SELC is subject to service of process under that Convention.  (See Def. Mem. at 10).

As described above, Sunrise attempted to serve process upon SELC, pursuant to Rule 4(h)(1), by delivering a copy of the Summons and Complaint to "SELC Ireland Ltd. c/o Amanda Dixon" at Ms. Dixon's home in North Carolina.  It subsequently attempted to serve SELC in Ireland, pursuant to Rule 4(f)(1), in accordance with the Hague Convention.  SELC contends that service upon Ms. Dixon was insufficient because Ms. Dixon "is not an officer, managing or general agent for SELC nor authorized to accept service" on behalf of the company.  (Def. Mem. at 9-10).  With respect to Sunrise's effort to complete service of process in accordance with the Hague Convention, SELC argues that such service "should not be considered by this Court" because the plaintiff failed to file proof of such service.  (Def. Reply Mem. at 1-2).  This court finds that neither of SELC's arguments is persuasive or supports the dismissal of this case.

### Sufficiency of Service Upon Ms. Dixon

Although the record establishes that Ms. Dixon is not an employee of SELC, Sunrise argues that she should be deemed a "managing or general agent" of the defendant for purposes of Rule 4(h)(1)(B).  (Pl. Opp. Mem at 4-6).  This court finds that the record supports such a conclusion.  As another judge in this district has explained:

---

[6]  Although Rule 4(f) addresses service upon individuals, Rule 4(h) provides for service upon a foreign corporation "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2).

> [T]he determination whether an individual is "a managing or general agent" [for purposes of Rule 4] depends on a factual analysis of that person's authority within the organization.  One occupying this position typically will perform duties which are "sufficiently necessary" to the corporation's operations.  He should be "a responsible party in charge of any substantial phase" of the corporation's activity.  In brief, it is reasonable to expect that such an agent will have broad executive responsibilities and that his relationship will reflect a degree of continuity.  Authority to act as agent sporadically or in a single transaction ordinarily does not satisfy this provision of the Rule.

Furukawa Elec. Co. of No. Am. v. Yangtze Optical Fibre & Cable Co. Ltd., No. Civ. A. 05-11219-RGS, 2005 WL 3071244, at *2 (D. Mass. Nov. 16, 2005) (quoting Gottlieb v. Sandia Am. Corp., 452 F.2d 510, 513 (1st Cir. 1971)).  There is no dispute in the instant case that Ms. Dixon has been serving as SELC's Business Development Manager, and has been tasked with primary responsibility for the company's North American sales and marketing efforts, since August 2012.  (Dixon Aff. ¶¶ 3-4).  There is also no dispute that Ms. Dixon coordinates and implements all of SELC's U.S. sales operations, is held out to the public as a member of SELC's four-person management team, and spends about 40 or more hours per week working on sales, marketing and other business matters for the defendant.  (Id. ¶ 5; Pl. Ex. F).  Therefore, Ms. Dixon can reasonably be considered a "managing or general agent" of SELC within the meaning of Rule 4(h)(1)(B).

This court's conclusion is further supported by SELC's assertion that it would consent to the exercise of personal jurisdiction over it in North Carolina.  In order for a federal district court to exercise personal jurisdiction over a foreign defendant, "the defendant must be amenable to service of process" within the forum.  Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc., 603 F.3d 1364, 1368 (Fed. Cir. 2010).  See also Touchcom, Inc., 574 F.3d at 1411 (explaining that determination of personal jurisdiction requires court to "first decide

whether the forum state's long-arm statute permits service of process" on defendants).  By offering to proceed in North Carolina based on Ms. Dixon's location and activities in that state, SELC is at least implicitly acknowledging that Ms. Dixon could be deemed its agent for service of process.  Consequently, the defendant's motion to dismiss on the grounds of insufficient service of process should be denied.

## Sufficiency of Service Under the Hague Convention

Even if the court were to find that service upon Ms. Dixon was insufficient to meet the requirements of Rule 4, this court would recommend that SELC's motion to dismiss for insufficient service of process be denied on the basis of Sunrise's service under the Hague Convention.  Rule 4(l) provides that when service is made outside the United States pursuant to the Hague Convention, such service "*must be proved*" as provided by the Convention.  See Fed. R. Civ. P. 4(l)(2)(A) (emphasis added).  However, Rule 4(l) further provides that a plaintiff's "[f]ailure to prove service does not affect the validity of service" and that "[t]he court may permit proof of service to be amended."  Fed. R. Civ. P. 4(l)(3).  Accordingly, Sunrise's failure to file proof of service following its service upon SELC in Ireland does not warrant the dismissal of Sunrise's Complaint.  Nevertheless, Sunrise is hereby ordered to file a proof of service, in compliance with Rule 4(l)(2), within 10 days of the date of this decision.

## IV.  **CONCLUSION**

For all the reasons described above, this court recommends to the district judge to whom this case is assigned that the "Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and (5)" (Docket No. 15) be DENIED.[7]


/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[7] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).